UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| James G. Blakely, a.k.a. James Gatewood Blakely, a.k.a. Jimmy G. Blakely, ) <br> ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> Leroy Cartledge, Ms. Bell, ) <br> ) <br> ) <br> Defendants. ) <br> ) | C/A No. 5:12-cv-02649-MGL-KDW <br><br><br> Report and Recommendation |

Plaintiff, an inmate with the South Carolina Department of Corrections ("SCDC") proceeding pro se, filed this 42 U.S.C. § 1983 action alleging that Defendants violated his constitutional rights. This matter is before the court on Defendants[1] Cartledge and Bell's Motion for Summary Judgment filed on May 14, 2013. ECF No. 53. The court entered a *Roseboro* Order[2] on May 15, 2013, advising Plaintiff of the importance of such motions and of the need for him to file an adequate response. ECF No. 55. Plaintiff filed a Response in opposition to Defendants' motion on June 25, 2013, ECF No. 61, and Defendants filed a reply to Plaintiff's response on July 8, 2013, ECF No. 62. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. Because Defendants'

---

[1] On May 31, 2013, the court adopted the Report and Recommendation entered on October 9, 2012 and summarily dismissed Plaintiff's claims against other Defendants except for his claim for deliberate indifference to medical needs against Defendants Cartledge and Bell. ECF No. 58.

[2] The court entered a "*Roseboro* order" in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (requiring that the court provide explanation of dismissal/summary judgment procedures to pro se litigants).

Motion for Summary Judgment is dispositive, a Report and Recommendation is entered for the court's review.

I. Background

Plaintiff, James G. Blakely, is an inmate housed at McCormick Correctional Institution. ECF No. 1 at 2. Plaintiff filed his Complaint on September 14, 2012, and alleges that he is diabetic and was denied diabetic meals during lock down. ECF No. 1 at 6. Plaintiff contends that he spoke with Defendant Bell "concerning his diabetic meals during lock down" and she told him Defendant Warden Cartledge "ordered that the diabetics only get bag meals." *Id.* at 6. Plaintiff alleges that he made Head Nurse Andrew aware that he was not receiving diabetic meals or snacks during lock down. *Id.* at 6. Plaintiff also contends that Nurse Andrew did not make sure that "diabetics get proper medical treatment during unit lock down." *Id.* at 3. Plaintiff alleges that Nurse Andrew told him that "security overrule[s] the medical needs of diabetics or any medical problems." *Id.* at 3. Plaintiff argues that during lock down on September 11, 2012, that the "nurses refused to give [him] his 4:00 p.m. insulin." *Id.* at 4. Plaintiff seeks injunctive and declaratory relief. *Id.* at 7.

II. Standard of Review

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

### III. Analysis

Defendants move for summary judgment arguing that Plaintiff failed to exhaust his administrative remedies before filing his § 1983 action. ECF No. 53-1 at 2-4. Defendants submit the affidavit of Ann Hallman, Chief of the Inmate Grievance Branch, who attests that

Plaintiff submitted a grievance, received on September 10, 2012, where Plaintiff complained that he was served a sandwich and a cup of juice for breakfast after receiving insulin. ECF No. 54-3 at 2. In his grievance, Plaintiff stated that his unit was on lockdown and diabetics did not get their diabetic meal. *Id.* Hallman avers that Plaintiff submitted another grievance on September 10, 2012 concerning the head nurse not making sure diabetics received diabetic meals during lockdown. *Id.* Hallman states that this grievance was returned to Plaintiff and he was given until September 22, 2012 to resubmit the grievance with the date of the incident. *Id*. at 2-3. Hallman attests that Plaintiff submitted another grievance on September 18, 2012, addressed to the Food Service Director, concerning Plaintiff not receiving a diabetic meal or snack, from September 8-13, 2012, when his unit was on lock down. *Id*. at 3. Defendants contend that when Plaintiff filed his Complaint on September 14, 2012, it was prior to the Warden responding to these grievances, before the time period to respond to the grievances had expired, and before Plaintiff filed a Step 2 grievance. ECF No. 53-1 at 2-4.

Plaintiff's memorandum filed in opposition to Defendants' summary judgment motion generally addresses his denial of access to courts claim that was dismissed by order of this court on May 31, 2013. ECF No. 58. Plaintiff's memorandum only contains one sentence that addresses his medical indifference claim by arguing that "Ms. Bell deliberately denied Plaintiff his diabetic meal." ECF No. 61 at 17. Plaintiff does not address Defendants' argument that Plaintiff's Complaint should be dismissed because of failure to exhaust his administrative remedies.

The Prison Litigation Reform Act of 1995 (PLRA) requires that "prisoners . . . exhaust such administrative remedies as are available prior to filing suit in federal court challenging prison conditions." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (internal quotation

marks omitted) (quoting 42 U.S.C. § 1997(e)(a)). The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Before bringing suit in federal court, "a prisoner must have utilized all available remedies 'in accordance with the applicable procedural rules,' so that prison officials have been given an opportunity to address the claims administratively." *Moore,* 517 F.3d at 725 (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). Although the PLRA lacks a definition for the term available, the Fourth Circuit has interpreted it to mean that "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Id.* Thus, administrative remedies are considered unavailable in situations in which "prison officials prevent inmates from using the administrative process." *Hill v. Haynes*, No. 08-7244, 2010 WL 2182477, at \*\*2 (4th Cir. June 2, 2010) (internal quotation marks omitted) (quoting *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). District courts have an obligation "to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." *Id.* (internal quotation marks omitted) (quoting *Aquilar–Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007)).

SCDC grievance policy time limits under the most recent version of the policy are summarized as follows: After unsuccessful attempts at informal resolution of the problem(s), **(1)** an inmate must fill out a Form 10-5 (Step 1 Grievance form) to explain his complaint and give the form to an employee designated by the Warden within fifteen days of the alleged incident; **(2)** the grievance must then be entered into SCDC's automated system, and the Institutional Inmate Grievance Coordinator ("IGC") notified so that the information in the automated system can be finalized and an attempt to informally resolve it can be made within ten working days

before sending it to the Warden; **(3)** the Warden should respond to the inmate in writing within 40 days of the Warden's receipt of the Step 1 grievance, and then the IGC has five working days to provide the Step 1 response to the inmate; **(4)** the inmate may then appeal the Warden's response by completing a Form 10-5a (Step 2 Appeal) and submitting it to the IGC within five "calendar days" of the inmate's receipt of the response; **(5)** the IGC then notifies the Inmate Grievance Branch of the Step 2 appeal and the Branch has another five "calendar days" to get the Step 2 appeal to the responsible SCDC official (the Division Director of Operations) for a response; **(6)** the Division Director of Operations then has 60 days from the day the appeal was received by the IGC at the institution to respond to the Step 2 grievance, and finally, **(7)** the IGC has another five days to serve the inmate with the Step 2 response. SCDC Policy/Procedure GA-01.12, at §§ 11; 13.1-13.6 (Oct. 1, 2010). The decision of the "responsible official" who answers the Step 2 appeal is the Department's final response in the matter. *Id.*

The undersigned has reviewed the record before the court and finds that SCDC officials received Plaintiff's grievances concerning not receiving his diabetic meal and snack during lock down on September 10, 2012.[3] ECF Nos. 53-7 and 53-8. Plaintiff filed his Complaint approximately four days later, before he had received a response to his grievance and before the time period to respond to his grievance had expired. *See* ECF No. 1. It is clear that Plaintiff filed this case prematurely, before he fully exhausted the SCDC administrative remedy process. Accordingly, the undersigned recommends that Defendants' summary judgment motion, ECF No. 53, be granted and that Plaintiff's Complaint be dismissed **without prejudice** to allow Plaintiff to complete the SCDC grievance process.

---

[3] Plaintiff also had a grievance dated September 13, 2012, that was received by SCDC officials on September 18, 2012, after Plaintiff had filed his Complaint.

IT IS SO RECOMMENDED.

October 25, 2013
Florence, South Carolina

Kaymani D. West
United States Magistrate Judge